(August 12, 2004)

■ MILDRED CRUZ et al., Appellants, v RUBY M. CASTANOS, Respondent. [781 NYS2d 23]—

Order, Supreme Court, Bronx County (Howard R. Silver, J.), entered on or about March 11, 2003, which, to the extent appealable, denied plaintiffs' motion for leave to renew an order (same court and Justice) entered on or about September 3, 2002, granting defendant's motion for summary judgment and dismissing the complaint, reversed, on the law and in the exercise of discretion, without costs, plaintiffs' motion to renew granted and, upon renewal, defendant's motion for summary

judgment denied and the complaint reinstated. Appeal from the prior order unanimously dismissed, without costs, as superseded by the appeal from the order denying renewal.

The record reflects that several exhibits referenced in the affidavit opposing defendant's motion for summary judgment on the issue of "serious injury" (Insurance Law § 5102 [d]) were omitted from the submission. Given plaintiffs' reasonable excuse of law office failure for this inadvertent omission and the absence of a showing of prejudice to defendant, plaintiffs' motion to renew based on submission of these exhibits should have been granted (*Telep v Republic El. Corp.*, 267 AD2d 57, 58 [1999]).

In her affidavit in opposition to the motion for summary judgment, plaintiff Cruz stated that on March 3, 2000, when her police patrol car was hit by a car driven by defendant, she lost consciousness after striking her head on the bar of the door. After regaining consciousness, she experienced severe dizziness and pains in her back, neck and legs, and vomiting. Thereafter, she consulted a neurologist for dizziness, severe headaches and continual nausea and vomiting. She wore a neck brace for more than two months and subsequently received physical therapy for several months for her neck and legs.

At her deposition taken on June 13, 2001, 15 months after the accident, Cruz testified that since the accident she could no longer exercise to the extent that she once did, and that she experienced frequent dizzy spells, lightheadedness, blurred vision, sometimes for as long as 30 minutes to an hour, and frequent headaches. She also stated that she missed substantial time at work and that her physical and emotional relationship with her husband had been compromised as a result of her injuries.

Dr. Landis Barnes, an osteopath, affirmed that Cruz was seen at his office on March 8, 2000, complaining of severe head pain, inability to move or flex her neck, blurred vision and thoracic pain, and mild nausea. On orthopedic evaluation, "it was found that range of motion of the neck revealed severe restriction in flexion 30 degrees; extension 40 degrees; right rotation 20 degrees, left rotation 25 degrees, lateral flexion was 40 degrees right and 45 degrees left." A compression test was positive for pain, there was weakness in the patient's right grip, and Soto-Hall was positive for pain in the cervical spine.

Dr. Barnes stated that Cruz received physical therapy three times a week "with little improvement." When she was evaluated again on June 7, 2000, the findings included "marked restriction of the range of motion in her neck, i.e., flexion 30

degrees; extension 35 degrees; right rotation 30 degrees; left rotation 30 degrees with pain; right lateral flexion 45 [degrees] with mild pain; and left lateral flexion 40 degrees." She had a positive right arm drop test and Apley's scratch test; there was weakness of the right grip; and Jackson's compression elicited pain. According to Dr. Barnes, "All of the above findings were abnormal," and Cruz was diagnosed with cephalgia, cervical sprain/strain-flexion/extension injury, status post-concussion syndrome with cervical muscle spasm. Dr. Barnes stated that over the three-month period, the patient showed "little improvement."

Dr. Barnes examined Cruz on January 28, 2002, again finding "marked restriction in flexion, right and left rotation, and right and left lateral flexion, totally comparable with the earlier findings." He stated that she "is still totally symptomatic," and "still complains of lightheadedness, dizziness and mild nausea." Based on the length of time as well as the marked restriction of movement early on and as of January 28, 2002, Dr. Barnes opined that these injuries were permanent in nature and directly related to the March 3, 2000 accident.

Dr. Barnes's affirmation contains sufficient objective medical evidence to raise a triable issue as to whether Cruz sustained a serious injury, inasmuch as he conducted range-of-motion tests and determined that there were quantifiable limitations on her range of motion (*see Ramos v Dekhtyar*, 301 AD2d 428, 429 [2003], citing *Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350 [2002]). The motion court held that since Dr. Barnes was not Cruz's treating physician and his examination followed an almost 20-month "gap in treatment," his affirmation was "insufficient proof of the duration of the alleged impairments claimed by the plaintiff." To the contrary, Dr. Barnes affirmed that the findings he made in January 2002 were "totally comparable" with the findings made and expressed in numeric percentages by another physician connected with his practice in March 2000, five days after the accident, and again in June 2000. This constitutes evidence that the patient's impairments endured at least from March 2000 through January 2002. In any event, any so-called "treatment gap" in Cruz's medical history goes to the weight to be given a medical opinion and is thus a question for the jury (*id.*). It does not resolve or eliminate the disputed factual issue as to whether plaintiff did or did not sustain a serious injury within the meaning of the No-Fault Law (*see Martin v Schwartz*, 308 AD2d 318, 320 [2003]). Concur—Mazzarelli, Saxe and Ellerin, JJ.

Buckley, P.J., and Marlow, J., dissent in part in a memoran-

dum by Buckley, P.J., as follows: I would find that the grant of summary judgment dismissing the complaint was proper and should therefore be affirmed.

The affirmation of Dr. Barnes was insufficient to create a triable issue of fact on the issue of serious injury. The affirmation does not indicate that any objective tests were performed, or that he relied on anything other than plaintiff Cruz's subjective complaints, in reaching the vague conclusion that she had restricted range of motion in her neck "totally comparable" to findings made by other doctors 20 months earlier (*see Franchini v Palmieri*, 1 NY3d 536 [2003]). The inadequacy of the affirmation is all the more notable in that MRIs, CTs and x-rays were all normal, and defendant cited the affirmation's shortcomings in her reply papers, yet plaintiffs failed to submit a clarifying affirmation on renewal. Even if plaintiffs should have been granted renewal based on their inadvertent omission of certain exhibits in opposing summary judgment, those exhibits were insufficient to raise a question of fact.